In the Matter of Sol M. Lefebre, Petitioner, v Barbara Blum, as Commissioner of the New York State Department of Social Services, et al., Respondents.

First Department, February 24, 1983

APPEARANCES OF COUNSEL

*Olga R. Perez* of counsel (*Michael D. Hampden,* attorney), for petitioner.

*Frederic L. Lieberman* of counsel (*Maryellen Weinberg* with him on the brief; *Robert Abrams, Attorney-General,* attorney), for Barbara Blum, respondent.

### OPINION OF THE COURT

Milonas, J.

Petitioner and her young child, recipients of public assistance in the Aid to Dependent Children category lived at 2725 Sedgwick Avenue in Bronx County. On January 15, 1981, the New York City Department of Housing Preservation and Development issued an order requiring that all residents of petitioner's building vacate the premises on the ground that the living conditions therein constituted a

danger to the life, health and safety of the occupants. According to petitioner, she unsuccessfully attempted to locate another apartment and was thus compelled to move in with her mother-in-law. In addition, petitioner was then without income, her public assistance grant having been suspended as the result of her failure to appear at a certification interview. It appears that she never received the letter notifying her of the date of the interview.

Prior to departing the Sedgwick Avenue address, petitioner applied for a special grant from the city Department of Social Services to pay for the storage of her property. Petitioner claimed that because the building had been abandoned and was constantly being vandalized, there was a high probability that her furniture and other possessions would be stolen. Since her public assistance had been suspended, the Department of Social Services refused her request. Therefore, she left her belongings behind when she moved in with her mother-in-law. She did return to Sedgwick Avenue each day to check on her property, but in early February of 1981, she discovered that her possessions were missing and reported the theft to the police. Subsequently, petitioner's public assistance was reinstated, and she rented her own apartment. She then applied to the New York City Department of Social Services for a furniture replacement grant. After this was denied, she asked for a fair hearing, which was conducted on May 6, 1981. Petitioner, who was not represented by a lawyer, stated that her own belongings consisted of a mattress and crib donated by friends. Pursuant to a decision dated June 26, 1981, respondent Commissioner of the New York State Department of Social Services rejected the furniture and clothing grant, holding that: "Section 352.2(d) of the regulations of the State Department of Social Services provides that supplemental allowances and grants may not be made other than as authorized under the Regulations. Section 352.7(a) of the Regulations provides for the issuance of a grant for furniture under certain circumstances. Appellant's circumstances do not come within the purview of that regulation nor within Section 352.7(d) of the Regulations which provides for replacement of clothing or furniture which has been lost in a fire, flood or other like

catastrophe. Accordingly, the agency's determination denying appellant's request for a furniture allowance was proper."

Petitioner thereupon commenced the instant CPLR article 78 proceeding, contending in part that she is entitled to a special furniture and clothing replacement grant under both subdivision 6 of section 131-a of the Social Services Law and the administrative agency's implementing regulations, 18 NYCRR 352.7.

Subdivision 6 of section 131-a of the Social Services Law states that:

"Notwithstanding any other provisions of this chapter or other law, a social services official may make provisions for the following items and services: (a) replacement of necessary furniture and clothing for persons in need of public assistance who have suffered the loss of such items as the result of fire, flood or other like catastrophe, provided provisions therefor cannot otherwise be made;

"(b) purchase of necessary and essential furniture required for the establishment of a home for persons in need of public assistance, provided provision therefor cannot otherwise be made".

According to 18 NYCRR 352.7:

"(1) If provision therefor cannot otherwise be made, each social services district shall provide for the purchase of necessary and essential furniture, furnishings, equipment, and supplies required for the establishment of a home for persons in need of public assistance. For purposes of this subdivision, such an allowance shall be provided only once and only when in the judgment of the social services official, one of the following conditions exists * * *

"(v) An individual's or family's living situation adversely affects the physical and mental health of that individual or family, and it is essential that the individual or family be rehoused in unfurnished housing accommodations in order to safeguard his or their health, safety and well-being * * *

"(d) *Replacement of clothing or furniture.* Each social services district shall provide for partial or total replacement of clothing or furniture which has been lost in a fire,

flood or other like catastrophe, provided such needs cannot otherwise be met through assistance from relatives or friends or from other agencies or other resources." (18 NYCRR 352.7 [a] [1] [v]; [d].)

It is petitioner's contention that the issuance of an order to vacate from her building, followed by the theft of her property from an abandoned building vulnerable to vandalism, as well as the fact that her public assistance had been discontinued, amounted to the sort of "like catastrophe" contemplated by section 131-a (subd 6, par [a]) of the Social Services Law and 18 NYCRR 352.7 (a). However, the Court of Appeals in *Matter of Howard v Wyman* (28 NY2d 434, 437) has declared that: "The loss of those articles [furniture and clothing] to one who has no money with which to replace them might well be deemed a 'catastrophe'. However, our task is to decide not whether a burglary may, in some instances, be termed a 'catastrophe' as that word is generally understood but, rather, what the Legislature and the Social Services Department intended when they used the phrase 'fire, flood or other like catastrophe' * * * Reasonably construed, the phrase, a 'like catastrophe' encompasses only a natural occurrence — and, in the case of a fire, one that is man-made — but a burglary is far too unlike a fire or a flood to be included." (Brackets added.) In a case involving a situation similar to the one in question here, *Matter of Brinson v Berger* (58 AD2d 529) the petitioner had been required to vacate her apartment pursuant to a notice from the city Housing and Development Administration. The apartment was later burglarized and her furniture and clothing were stolen. This court, relying upon *Matter of Howard v Wyman* (*supra*) concluded that these occurrences did not constitute a "like catastrophe" within the meaning of the Department of Social Services' regulations. Thus, the commissioner properly denied petitioner's application for a special grant under the "catastrophe" provisions.

Petitioner also argues that she is eligible for a grant for the purchase of essential furniture necessary for the establishment of a home pursuant to section 131-a (subd 6, par [b]) of the Social Services Law. Although in *Matter of Conyers v D'Elia* (50 AD2d 855) the court asserted that the

authority relating to supplemental furniture grants envisions "the establishment of a home where none previously existed", the circumstances of that case and the one before us are distinguishable. In *Conyers,* the petitioner had simply moved into a new apartment with her old furniture, some of which she chose to discard. Here, the petitioner was forced to vacate her apartment by order of the Department of Housing Preservation and Development, which was issued because of the deplorable conditions existing in her building. Petitioner's living conditions clearly were such as to adversely affect the physical and mental health of her and her child, and their health, safety and well-being mandated that they be rehoused in new accommodations. Through no deliberate fault of her own, she was temporarily without public assistance and thus unable to immediately procure another apartment or to pay for the storage of her property. When she was finally able to rent a new apartment, her furniture had been stolen, and she had to start again setting up a home. She didn't simply desire to throw away her old furniture and replace it with new, but, due to an unfortunate sequence of events, she was left virtually destitute. This appears to be precisely the type of situation which section 131-a (subd 6, par [b]) of the Social Services Law and 18 NYCRR 352.7 (a) were intended to remedy.

Moreover, the record does not reveal if respondents ever considered whether petitioner was entitled to emergency assistance under section 350-j of the Social Services Law and 18 NYCRR Part 372. (See *Matter of Brinson v Berger, supra,* p 530, wherein the court remanded the case in order to determine whether there existed the sort of "unforeseeable need" covered by the provisions for emergency assistance.) The administrative decision did not refer at all to emergency assistance. The petitioner appeared without counsel at the fair hearing and the brief transcript contains no indication that it would have been possible, as suggested by respondent, for petitioner to transport her belongings to her mother-in-law's apartment. Under the circumstances, respondents should have determined whether petitioner was entitled to an emergency assistance grant.

In this article 78 proceeding, transferred to this court by order of the Supreme Court, Bronx County (SILBOWITZ, J.), entered on December 29, 1981, seeking to annul the determination of respondent Commissioner of the New York State Department of Social Services, dated June 26, 1981, which denied petitioner's application for a special allowance to replace furniture and clothing stolen from her abandoned apartment, petition should be granted to the extent of annulling the determination, without costs or disbursements, and remanding the matter for a hearing in accordance with this decision.

SANDLER, J. P., SULLIVAN, ASCH and ALEXANDER, JJ., concur.

Determination of State respondent dated June 26, 1981 annulled, without costs and without disbursements and the matter remanded for a hearing in accordance with the opinion of this court filed herein.